UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PELICAN RENEWABLES 2, LLC | CIVIL ACTION |
| VERSUS | NO. 15-5485 |
| DIRECTSUN SOLAR ENERGY & TECHNOLOGY, LLC, AND DEREK GABRIEL | SECTION "L" (4) |

## ORDER & REASONS

Before the Court is Defendants DirectSun Solar Energy & Technology, LLC, and Derek Gabriel's ("DirectSun") Motion to Set Aside Default. The Court has reviewed the briefs and the applicable law, and the Court now issues this Order & Reasons.

### I. BACKGROUND

This case arises out of a contract dispute. Defendant DirectSun installs solar photovoltaic systems in commercial and residential buildings throughout the southeastern United States, for which DirectSun receives tax credits in states such as Louisiana. In early 2014, agents of Pelican Renewables 2, LLC ("Pelican") began negotiating with Derek Gabriel of DirectSun regarding a possible purchase of DirectSun's entitlements to Louisiana tax credits. Pelican conditioned the purchase of the tax credits on a requirement that DirectSun would obtain a surety bond or similar product to protect Pelican in the event that DirectSun failed to convey the tax credits. DirectSun failed to satisfy Pelican's request for a surety bond during the negotiations, so the parties tentatively agreed to use a piece of real estate, 322 Wiregrass Road, Rockingham, North Carolina ("the Rockingham property"), as security.

Pelican also demanded certain conditions before it would accept the Rockingham property as collateral. One of these conditions was a requirement that DirectSun provide Pelican with documentation indicating the "amount/terms of any and all existing debt" encumbering the

real estate. DirectSun communicated to Pelican that Directsun had sent Ricardo Mosby, DirectSun's attorney, the property information so that encumbrances on the property could be researched. On May 24, 2014, DirectSun forwarded Pelican an email purportedly containing a "BPO"—a Broker Property Opinion—for the Rockingham property. The forwarded email was from the address "exitbposerv@gmail.com," and the email contained an invoice for "services and research" on the Rockingham Property. The BPO stated that the evaluation was conducted by a real estate broker named Nicole Hayden of the firm Exit Realty. The BPO concluded that Billy Ingram transferred the property to DirectSun, and that the property was encumbered by no outstanding judgments or mortgages.

Pelican accepted the BPO as sufficient information about the Rockingham Property, and entered into a Purchase and Sale Agreement on May 28, 2014 with DirectSun for sixty-seven tax credits. DirectSun pledged a first-priority lien on the Rockingham property as security for DirectSun's payment of the tax credits, and warranted that DirectSun was the sole owner of the property; that it owned the property free and clear of any liens, claims, encumbrances, or restrictions; and that it would keep the property free and clear of all encumbrances until the tax credits had been turned over to Pelican.

DirectSun failed to deliver the tax-credit proceeds by the contractual deadline—March 15, 2015. R. Doc. 1 at 5. Pelican sent a "Notice of Default" to DirecttSun on March 16, 2016. Pelican then began researching its options for enforcing its rights by exercising its lien on the Rockingham property. On July 22, 2015, Pelican contacted Nicole Hayden of Exit Realty regarding the BPO on the Rockingham property. Nicole's husband Tim responded, averring that no employee of Exit Realty had created the BPO and that "exitbposerv@gmail.com" was not an Exit Realty email address. Tim denied any relationship with DirectSun or its agents, and opined

2

that the Exit Realty logo had been cut-and-pasted from Exit Realty's website into the BPO. Pelican afterwards investigated the Register of Deeds for Richmond County, North Carolina, and found no records which reflect a transfer of the Rockingham property from Ingram to DirectSun.

Pelican filed suit in the Eastern District of Louisiana on October 27, 2015, alleging breach of contract and unfair trade practices against Defendant DirectSun.  Pelican also alleged negligent misrepresentations, intentional misrepresentations, and tortious interference with a contractual relationship by Defendant Gabriel.  Pelican served copies of the Summons and Complaint on DirectSun and Gabriel on November 20, 2015.  R. Doc. 6-2.  Ten days later, Gabriel signed the return receipt for the mailing addressed to DirectSun.  Neither Defendant Gabriel nor Defendant DirectSun answered or otherwise responded to the Complaint within twenty-one days, and Pelican filed for an entry of preliminary default on January 5, 2016.  There is no evidence in the record that counsel for Defendants was engaged in settlement negotiations with Pelican before Pelican filed for default.  The Clerk of Court granted the motion on January 8, 2016.  Both defendants made their first appearance in this litigation on January 28, 2016, when they jointly filed a Motion to Set Aside Default.

A suit involving the closely-related parties and similar causes of action to this matter was also filed during this time period in Georgia.  Pelican Renewables 3, LLC, (a sister company to Pelican Renewables 2, LLC, who instituted the instant litigation), also sued DirectSun and Gabriel on October 27, 2015, alleging breach of contract, unfair trade practices, fraud, and negligent misrepresentations in relation to a Missouri construction job where Pelican provided start-up capital to DirectSun in exchange for DirectSun's post-construction rebate. R. Doc. 11-2 at 1.  Defendants timely responded to the Georgia litigation, filing an Answer on November 24, 2015.  R. Doc. 11-2 at 13.

**I.     PRESENT MOTION**

Defendants move to set aside the entry of default on the grounds that Defendants' tardy entrance to the litigation was for good cause pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.  R. Doc. 11-1.

**A.     DirectSun's Motion to Set Aside**

DirectSun begins by shifting the blame for its tardy appearance onto its attorneys. DirectSun notes that it consulted "Georgia counsel" upon being served by Pelican.  The Georgia counsel advised DirectSun that service of the complaint on both DirectSun and Gabriel needed to be made personally.  Upon learning through experience that failure to respond to service may result in a default judgment, DirectSun employed new attorneys who decided that it would be proper to enter the instant litigation.

With the preceding in mind, DirectSun turns to the law of default judgments.  DirectSun notes that default judgments are disfavored, as they are not outcomes on the merits.  DirectSun also contends that the "good cause" standard of the Fifth Circuit has many factors, including willfulness, but that the guiding principal of the standard points to resolution of the case on the merits.  DirectSun also contends that its error is within the scope of "good cause," because it relied on the advice of counsel when deciding not to enter the litigation.  DirectSun argues that its failure to act was not willful, and that Pelican has suffered no prejudice by DirectSun's untimely entry.

DirectSun also cites case law where courts in the Fifth Circuit have set aside a default judgment despite a tardy appearance by a defendant, and asks the Court to find the same regarding the instant motion.  R. Doc. 11-2 at 5–6.

**B.     Pelican's Opposition**

Pelican timely responds. Pelican emphasizes the specific steps of the appropriate Fifth Circuit test for setting aside the entry of a default. Pelican first argues that the Court must examine the "willfulness" of DirectSun's failure to appear without examining any other factors, and that willfulness is dispositive. Pelican aggressively contends that DirectSun's actions were willful, comparing DirectSun's failure to act to a substantial body of Fifth Circuit case law. Pelican cites cases with facts similar to the one at bar where the Court in its discretion decided to deny the motion to set aside the default.

Pelican also argues that DirectSun has failed to present a meritorious defense. Pelican argues that this is a significant factor on a Rule 55(c) motion, and argues that DirectSun has failed to meet its burden as the movant. Pelican correctly notes that DirectSun fails to address the merits of its defense in its motion to set aside the default. DirectSun does deny the allegations in its attached Complaint, but its denial includes no substantive discussion of the merits of its defense or even a cursory application of the legal principles which it cites.

Lastly, Pelican cites the remaining "good cause" factors and argues that these also require a finding for Pelican. Pelican claims that it will be prejudiced if the entry of default is set aside, because Defendants will engage in fraudulent behavior. Pelican cites the questionable authenticity of the BPO in support of its claim that fraud is a concern in this case. Pelican also avers that DirectSun did not act with urgency in response to the default—DirectSun waited five days after the entry of default to contact Pelican. DirectSun filed its motion to set aside the default judgment on the day before counsel for Pelican had expressed an intent to file its motion for a final default judgment. Counsel for Pelican also gave DirectSun a considerable grace period to file a motion to set aside the default, and DirectSun waited until the last day of this grace period to file its motion.

5

### C.     DirectSun's Reply

DirectSun replies with leave of Court.  R. Doc. 17.  DirectSun elaborates upon the willfulness arguments presented in its motion by providing additional case law and evidence of post-default efforts to timely reenter the litigation.  DirectSun also argues that it has a likelihood of success on the merits, because Pelican failed to register to do business in Louisiana. DirectSun cites Rule 17 of the Federal Rules of Civil Procedure as well as articles 690 and 691 of the Louisiana Code of Civil Procedure and La. Rev. Stat. § 1354.  DirectSun points to *O'Neil Productions, Inc. v. ABC Sports, Inc.*, where the court dismissed the action on the grounds that defendant lacked the procedural capacity to sue in Louisiana.  Civ. A. No. 06-10804, 2007 WL 1169357 (E.D. La. Apr. 19, 2007).

### D.     Pelican's Sur-Reply

Pelican timely filed its sur-reply with leave of Court.  R. Doc. 19.  Pelican contends that DirectSun's post-default behavior cannot be used as evidence of lack of willfulness under the Fifth Circuit's jurisprudence.  Pelican also attacks DirectSun's argument that Pelican's suit is procedurally defective under Louisiana law.  Pelican contends that Pelican lacks sufficient contacts for the articles concerning corporate registration to apply.  R. Doc. 19 at 4–8.  Pelican also mentions in a footnote that the state registration requirements may be supplanted by *Erie* doctrine.  R. Doc. 19 at 4, n.2.  Pelican cites cases where Louisiana courts have refused to apply the registration requirements, on the grounds that a state may only prevent a federal court from granting relief in a diversity action by denying the substantive right of action asserted.  *See LFD Realty v. Schiro*, Civ. A. No. 95-2298, 1998 WL 209460, at *1 (E.D. La. 1998).

6

## II. LAW AND ANALYSIS

### A. The Law of Default Judgments

DirectSun's motion is filed pursuant to Federal Rule of Civil Procedure 55(c), which permits a court to set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). The Fifth Circuit has established a three part test for determining whether to set aside the default. "[T]he district court should consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5 th Cir. 1985). A finding of willful default may be considered dispositive. *In re Chinese Manufactured Drywall Products Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014); *see also Cooper v. Faith Shipping*, Civ. A. No. 06-892, 2010 WL 2360668, at *12 n.104 (E.D. LA. June 9, 2010). The failure to present a meritorious defense may also be dispositive. *Jenkens & Gilchrist*, 542 F.3d 114, 120 (5th Cir. 2008). But these factors are not exclusive. Other considerations may be taken into account, including whether a party such as DirectSun acted expeditiously to correct the default. *See Chinese Drywall*, 742 F.3d at 594. A district court need not weigh all possible factors; "the imperative is that [the factors] be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause.'" *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992).

The Fifth Circuit takes the position that resolution of a case on the merits is preferable a default judgment, and therefore default judgments are disfavored. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999). "This policy, however, is counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Id.* (internal quotation marks and citations omitted). If there are no countervailing equities such as a legitimate claim of prejudice that

would arise from setting aside the default, "any doubt should, as a general proposition, be resolved in favor of [the party moving to set aside the default] to the end of securing a trial upon the merits." *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960). The Fifth Circuit has approvingly noted that motions to set aside entry of default are more commonly granted than motions to set aside default judgments. *In re OCA*, 551 F.3d 359, 370 (5th Cir. 1992).

### B. Willfulness of Default

The Court finds that DirectSun's default was not willful for purposes of Rule 55(c)'s "good cause" analysis. Fed. R. Civ. P. 55(c). The Fifth Circuit has defined willfulness as "an intentional failure to respond to litigation." *In re Oca*, 551 F.3d at 370 n.32. Courts in the Fifth Circuit have found both willfulness and an absence of willfulness in cases where a served party failed to timely respond. The Court finds two cases on point, *Cooper v. Faith Shipping*, Civ. A. No. 06-892, 2010 WL 2360668, at *12 n.104 (E.D. La. June 9, 2010), and *Lacy v. Sitel Corp.* 227 F.3d 290, 291–93 (5th Cir. 2000), and holds that the instant matter is controlled by *Lacy*. DirectSun's default was not willful, because DirectSun engaged in sufficient contacts with the matter post-service by responding to similar litigation in another venue, the Northern District of Georgia. The Defendants' failure to file an Answer in the instant litigation was therefore not an effort to "play games" with the Court, and it would be inequitable for the Court to use its discretion to foreclose resolution of this case on the merits. *Dierschke*, 975 F.2d at 183.

The argument primarily advanced by DirectSun in its brief is foreclosed by *Cooper*, because mere reliance on the faulty advice of counsel is an insufficient ground to avoid a finding of willfulness. 2010 WL 2360668, at *12. In *Cooper*, the Brazilian defendant argued that its default was not willful "because it acted on the advice of its counsel, who held the view that [the

8

defendant's] connections with Louisiana were minimal, and a court in Louisiana could not, under the[] circumstances, exercise personal jurisdiction over" it. *Id.* at *13. The Court found this argument unpersuasive, characterizing this defense as a "conscious decision to evade . . . litigation after being served." *Id.* at 13; *see also Chinese Drywall*, 742 F.3d at 594–95 (rejecting the argument that lack of familiarity with U.S. litigation practice could excuse willfulness); *Dierschke*, 975 F.2d at 184 (5th Cir. 1992) (characterizing an alleged failure to understand the implications of service as willful, and opining that "[Defendant chose to make a decision that he hadn't been served when, in fact, he had"). DirectSun's reliance on the faulty advice of counsel, in and of itself, cannot excuse willfulness. Willfulness is a conscious decision to ignore service, and DirectSun cannot deny willfulness solely by pointing to its Georgia counsel. *See Cooper*, 2010 WL 2360668, at *12.

Counsel for Plaintiff cited *Chinese Drywall* at oral argument, and the Court is very familiar with the circumstances of that case. *Chinese Drywall*, 742 F.3d 576. The Court notes that *Chinese Drywall* is distinguishable from the instant matter. In *Chinese Drywall*, the Court on multiple occasions encouraged the Chinese defendants to file an Answer, and the Court even went so far as to state that it would impose a default if an Answer were not filed. Nevertheless, the Chinese defendants refused to enter the litigation—the Chinese defendants waited nearly a year after service of the First Amended Complaint to file a notice of appearance. *See Chinese Drywall*, 742 F.3d at 595. Therefore, the willfulness of default in *Chinese Drywall* was so obvious on the facts that the case provides relatively little aid in circumstances such as the one at bar, where the question is closer.

The Court finds that DirectSun's failure to respond was not fatal, because DirectSun engaged in sufficient contacts with the litigation to show that it intended to resolve the suit. The

Fifth Circuit's opinion in *Lacy* is highly analogous. 227 F.3d at 290. In *Lacy*, the Fifth Circuit held that a failure to respond to summons was not willful, despite the fact that the failure to answer was due to a mistaken assumption that service was improper. The *Lacy* opinion appears to present a direct conflict with *Cooper* and *Dierschke*, but it is distinguishable. The *Lacy* court found that the failure to respond was not willful because counsel for the *Lacy* defendant engaged in significant contacts with the litigation in the wake of service, even though counsel did not file the appropriate responses with the court. *Id.* The facts in *Lacy* are analogous to the facts at bar, because the "repeated contacts" by DirectSun in the Northern District of Georgia litigation demonstrated an intent not to "play games" with the Court or to ignore the Eastern District of Louisiana litigation. *Compare Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 501 (5th Cir. 2015) (finding that a defendant was "playing games with the court" when the defendant made no effort to resolve the matter despite being served with process on two separate occasions seven months apart), *with Hancock Bank v. Oller*, No. CV 14-1300, 2016 WL 301695, at *5 (E.D. La. Jan. 25, 2016) (finding a failure to answer to be negligent, rather than willful, where the party "repeatedly appeared before the Court" and appeared "engaged in litigating" the matter despite failing to answer). The Court finds it pertinent, but not dispositive, that DirectSun's post-service contacts were not with the instant litigation.

Upon review of the policies and precedent of the Fifth Circuit's default judgment jurisprudence, the Court holds that a party may engage in sufficient contacts to avoid a finding of willful failure to answer if the party timely and in good faith responds to a related lawsuit. A party may not avoid a finding of willfulness solely by touting its vigorous enthusiasm for litigating an unrelated matter. *See Dierschke*, 975 F.2d at 184. The Court finds the sum of the following facts at bar to be sufficient to demonstrate excusable inadvertence rather than

10

willfulness: (1) defendant relied on the incorrect advice of counsel when choosing not to file an answer to one of multiple complaints; (2) defendant timely responded to the complaint which he or she believed was correctly served; (3) defendant timely responded to a complaint in which the parties were virtually identical to the complaint which was left unanswered; (4) defendant timely responded to a complaint which asserted identical or near-identical causes of action to the complaint which was left unanswered; and (5) defendant timely responded to a complaint which was filed simultaneously or near-simultaneously to the complaint which was left unanswered. The preceding facts indicate an intent to defend one's rights, rather than to "play games." The alternative remedy of a malpractice action rings hollow when the defendant has signaled a respect for both the judiciary and the opposing party in contemporaneous and analogous litigation.

### C. MERITORIOUS DEFENSE

DirectSun presents sufficient evidence of a meritorious defense to sustain its burden. In determining whether a defendant has met his or her burden, "[l]ikelihood of success is not the measure. Defendants' allegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Side by Side Redevelopment, Inc. v. City of New Orleans*, Civ. A No. 09-03861, 2010 WL 375237, at *3 (E.D. La. Jan. 25, 2010) (internal citations and quotations omitted). But the presentation of "mere legal conclusions" is insufficient. *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008). The defendant must make a "clear and specific showing . . . by [a] definite recitation of [the] facts" in support of his or her defense. *Id.* at 122. DirectSun provides no factual evidence in support of its substantive defenses, but its procedural capacity to sue argument is supported by more than DirectSun's *ipse dixit*.

1. **Pelican's Evidence of a Substantive Meritorious Defense**

DirectSun's Motion to Set Aside does not reference DirectSun's likelihood of success on the merits, or address the substance of DirectSun's defenses in any way.  DirectSun attaches its proposed Answer, but the Answer merely invokes defenses rather than providing any supporting factual evidence.  R. Doc. 11-3.  The presentation of "mere legal conclusions" is insufficient.  *Jenkens*, 542 F.3d at 119.  Therefore, neither the motion nor the proposed Answer satisfy DirectSun's burden of proving likelihood of success on the merits.

2. **Pelican's Evidence of a Procedural Meritorious Defense**

DirectSun sustains its burden of proving a meritorious defense by arguing that Pelican lacks procedural capacity to sue under Louisiana law.  DirectSun brings its procedural defense in its reply, and the Court may consider such evidence.  *See Vais Amrs, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004).  Barring positive federal law, a federal court sitting in diversity must apply the substantive law of the state in which it sits.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938).  Procedural law remains the domain of the federal court.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  The Federal Rules of Civil Procedure cannot be displaced by state law pursuant to *Erie*.  *See id.* ("The *Erie* rule has never been invoked to void a Federal Rule.").

Louisiana law provides that "[n]o foreign limited liability company transacting business in this state shall be permitted to present any judicial demand before any court of this state unless it has been authorized to transact such business . . . ."  La. R.S. 12:1354(A).  The Court is unaware of any federal precedent concerning this provision, but federal courts have created some precedent on § 1354's sister-provision for corporate entities, § 314.  La. R.S. 12:314(A).  Section 314 is identical to § 1354 for purposes of capacity to sue, except that it concerns corporations.  *See id.*

The Court finds that the analogous precedent interpreting § 314 provided by the parties fails to properly apply federal law, and that a correct analysis shows that DirectSun has pleaded a meritorious defense.  DirectSun points to *O'Neil*, where this Court held that a foreign corporation lacked capacity to sue in federal court, because the corporation was not authorized to do business in Louisiana pursuant to § 314. *O'Neil Prods., Inc. v. ABC Sports, Inc.*, No. CIV.A.06 10804, 2007 WL 1169357, at *3 (E.D. La. Apr. 19, 2007).  *O'Neil* does not cite *Erie*, or explain why it chooses to apply Louisiana's law in dismissing the plaintiff for lack of capacity to sue.  Pelican cites *Nat'l Hous.* and *LFD Realty*, which decline to apply § 314 on grounds of *Erie*.  *See Nat'l Hous. Exch., Inc. v. Villarrubia*, Civ. A. No. 95-3745, 1997 WL 222521, at *3 (E.D. La. May 2, 1997) (refusing to apply § 314 as a "procedural provision of state law"); *LFD Realty v. Schiro*, Civ. A. No. 95-2298, 1998 WL 209460, at *1 (E.D. La. Apr. 28, 1998) (citing *Begay v. Kerr—McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982) (refusing to apply § 314 because "[states] have no power to enlarge or contract the federal jurisdiction").  These cases fail to properly apply *Erie* doctrine.  A federal court must follow the commands of the Federal Rules of Civil Procedure.  *See Hanna*, 380 U.S. at 465.  Rule 17(b) of the Federal Rules of Civil Procedure provides for the capacity to sue of individuals, corporations, and "all other parties."  *See* F.R.C.P. 17(b).  As an LLC, Pelican is an "other party, and the capacity to sue for "other parties is governed "by the law of the state where the court is located."  *Id.*  Therefore, the Court borrows Louisiana's procedural capacity laws for LLCs, and DirectSun successfully plead a meritorious defense by pointing to this a capacity deficiency on the part of Pelican.

Pelican's extensive briefing in its sur-reply concerning the facts of Pelican's relationship with Louisiana is beyond the scope of this Court's current inquiry.  "[L]ikelihood of success is not the measure.  Defendants' allegations are meritorious if they contain 'even a hint of a

13

suggestion' which, proven at trial, would constitute a complete defense." *Jenkens*, 542 F.3d at 119.

### D. PREJUDICE TO PELICAN

There is no harm to a plaintiff where "the setting aside of the default has done no harm to plaintiff except to require it to prove its case. It has decided nothing against it except that it cannot continue to hold the sweeping [relief] it obtained . . . without a trial and by default." *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960).

The Court finds that Pelican fails to prove prejudice because it asserts no cognizable prejudice beyond the slight delay associated with an untimely filing. "[M]ere delay does not alone constitute prejudice." *Lacy*, 227 F.3d at 293. The Court disagrees with Pelican's assertion that the "opportunities for fraud and collusion" which may result from delay present a concern in this matter. *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). The delay has been minimal, and Pelican has not yet proven the sweeping allegations of dishonest conduct that are asserted in its brief.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that DirectSun's Motion to Set Aside Preliminary Default, R. Doc. 11, is hereby **GRANTED**. The Clerk of Court's Entry of Default, R. Doc. 9, is **SET ASIDE**.

New Orleans, Louisiana, this 2nd day of March, 2016.

_____
UNITED STATES DISTRICT JUDGE