UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PELICAN RENEWABLES 2, LLC | CIVIL ACTION |
| VERSUS | NO. 15-5485 |
| DIRECTSUN SOLAR ENERGY & TECHNOLOGY, LLC, AND DEREK GABRIEL | SECTION "L" (4) |

## ORDER & REASONS

Before the Court is Plaintiff Pelican Renewables 2, LLC's Motion for Summary Judgment. Defendants have not responded to the motion. The Court has reviewed the brief and applicable law, and now issues this Order & Reasons.

### I.  BACKGROUND

This case arises out of a contract dispute. Defendant DirectSun installs solar photovoltaic systems in commercial and residential buildings throughout the southeastern United States, for which DirectSun receives tax credits in states such as Louisiana. In early 2014, agents of Pelican Renewables 2, LLC ("Pelican") began negotiating with Derek Gabriel of DirectSun regarding a possible purchase of DirectSun's entitlements to Louisiana tax credits. Pelican conditioned the purchase of the tax credits on a requirement that DirectSun would obtain a surety bond or similar product to protect Pelican in the event that DirectSun failed to convey the tax credits. DirectSun failed to satisfy Pelican's request for a surety bond during the negotiations, so the parties tentatively agreed to use a piece of real estate, 322 Wiregrass Road, Rockingham, North Carolina ("the Rockingham property"), as security.

Pelican also demanded certain conditions before it would accept the Rockingham property as collateral. One of these conditions was a requirement that DirectSun provide Pelican with documentation indicating the "any and all existing debt" encumbering the real estate. DirectSun

communicated to Pelican that Directsun had sent Ricardo Mosby, DirectSun's attorney, the property information so that encumbrances on the property could be researched. On May 24, 2014, DirectSun forwarded Pelican an email purportedly containing a "BPO"—Broker Property Opinion—for the Rockingham property. The forwarded email was from the address "exitbposerv@gmail.com," and contained an invoice for "services and research" on the Rockingham Property. The BPO stated the evaluation was conducted by a real estate broker named Nicole Hayden of the firm Exit Realty. The BPO concluded Billy Ingram transferred the property to DirectSun, and that the property was encumbered by no outstanding judgments or mortgages.

Pelican accepted the BPO as sufficient information about the Rockingham Property, and entered into a Purchase and Sale Agreement on May 28, 2014 with DirectSun for sixty-seven tax credits. DirectSun pledged a first-priority lien on the Rockingham property as security for DirectSun's payment of the tax credits, and warranted that DirectSun was the sole owner of the property; that it owned the property free and clear of any liens, claims, encumbrances, or restrictions; and that it would keep the property free and clear of all encumbrances until the tax credits had been turned over to Pelican.

DirectSun failed to deliver the tax-credit proceeds by the contractual deadline—March 15, 2015. R. Doc. 1 at 5. Pelican sent a "Notice of Default" to DirecttSun on March 16, 2016.  Pelican then began researching its options for enforcing its rights by exercising its lien on the Rockingham property. On July 22, 2015, Pelican contacted Nicole Hayden of Exit Realty regarding the BPO on the Rockingham property. Nicole's husband Tim responded, averring that no employee of Exit Realty had created the BPO and that "exitbposerv@gmail.com" was not an Exit Realty email address. Tim denied any relationship with DirectSun or its agents, and opined that the Exit Realty logo had been cut-and-pasted from Exit Realty's website into the BPO. Pelican afterwards

investigated the Register of Deeds for Richmond County, North Carolina, and found no records which reflect a transfer of the Rockingham property from Ingram to DirectSun.

Pelican filed suit in the Eastern District of Louisiana on October 27, 2015, alleging breach of contract and unfair trade practices against Defendant DirectSun. Pelican also alleged negligent misrepresentations, intentional misrepresentations, and tortious interference with a contractual relationship by Defendant Gabriel. Pelican served copies of the Summons and Complaint on DirectSun and Gabriel on November 20, 2015. R. Doc. 6-2. Ten days later, Gabriel signed the return receipt for the mailing addressed to DirectSun. Neither Gabriel nor DirectSun answered or otherwise responded to the Complaint within twenty-one days, and Pelican filed for an entry of preliminary default on January 5, 2016. There is no evidence in the record that counsel for Defendants was engaged in settlement negotiations with Pelican before Pelican filed for default. The Clerk of Court granted the motion on January 8, 2016. Both defendants made their first appearance in this litigation on January 28, 2016, when they jointly filed a Motion to Set Aside Default.[1] The Court later set aside the entry of default on March 3, 2016.  R. Doc. 20.

On May 9, 2016, the Court granted a motion for leave to file a third party complaint. DirectSun sought to bring suit against ABO Ventures, Inc., ("ABO") on the grounds that ABO agreed to deliver solar energy credits to DirectSun, but later failed to do so. ABO has not yet entered the instant litigation. On November 17, 2016, then-counsel for Defendants informed the Court he had received a letter from Defendants terminating his representation. R. Doc. 44. Subsequently, counsel filed a motion to withdraw, which the Court granted. R. Doc. 49. On

---

[1] A suit involving the closely-related parties and similar causes of action to this matter was also filed during this time period in Georgia. Pelican Renewables 3, LLC, (a sister company to Pelican Renewables 2, LLC, who instituted the instant litigation), also sued DirectSun and Gabriel on October 27, 2015, alleging breach of contract, unfair trade practices, fraud, and negligent misrepresentations in relation to a Missouri construction job where Pelican provided start-up capital to DirectSun in exchange for DirectSun's post-construction rebate. R. Doc. 11-2 at 1. Defendants timely responded to the Georgia litigation, filing an Answer on November 24, 2015. R. Doc. 11-2 at 13.

November 21, 2016, Plaintiff filed a motion seeking summary judgment. To date, Defendants have not opposed the motion.

## II. PRESENT MOTION (R. Doc. 47)

Plaintiff argues it is entitled to summary judgment against Defendants for breach of contract, intentional misrepresentation, or in the alternative negligence misrepresentation. R. Doc. 47. These claims stem from Plaintiff's agreement to invest in DirectSun and purchase solar tax credits it was assigned. R. Doc. 47-1 at 1-2. According to Plaintiff, it agreed to provide funds for installations in exchange for Louisiana state tax credits valued at $833,333.33. R. Doc. 47-1 at 2. As security, DirectSun pledged a security interest over the solar leases and equipment, as well as real estate it purported to own. R. Doc. 47-1 at 3. DirectSun did not make the promised credit payment, and Plaintiff sought to recover pursuant to the various security interests. R. Doc. 47-1 at 4. Upon investigation, Plaintiff learned DirectSun did not own the solar leases, real estated, and was not authorized to file the tax credits.

Plaintiff argues that at the time of the contract, DirectSun was not the owner or lessor of the solar leases, which were instead owned by ABO Ventures. R. Doc. 47-1 at 4-5. Plaintiff contends DirectSun paid ABO "in return for a pledge of the solar leases," but the agreement only gave DirectSun a security interest in the leases, rather than assigning the leases to them. R. Doc. 47-1 at 5. Plaintiff argues the plain language of the agreement prohibited assignment, and DirectSun intentionally deceived Plaintiff regarding the ownership of the leases, as "Gabriel removed ABO's name from each Solar Lease and inserted DirectSun's name." R. Doc. 47-1 at 6. Further, Plaintiff contends DirectSun represented it had already filed for tax-credit payments with the state, despite knowing it did not have authority to file the tax credits, as it did not own the solar leases. R. Doc. 47-1 at 6.

4

Additionally, Plaintiff argues DirectSun did not own the real estate it offered as security for the agreement. R. Doc. 47-1 at 7. Gabriel stated that the property had been sold to him by a Mr. Billy Ingram, who is one of the principals of ABO, as collateral for other projects they were working on. R. Doc. 47-1 at 7-8. Plaintiffs claim Gabriel has never acted as the owner of the property; never paid taxes on it, never visited it, and asked Mr. Ingram for documents regarding the property's value, rather than furnishing them himself. R. Doc. 47-1 at 8. According to Plaintiff, this is evidence Defendants were fully aware they did not own the property. After Defendants failed to make the credit payments, Plaintiff investigated the property, and eventually learned DirectSun did not own the property it had offered as collateral. R. Doc. 47-1 at 9.

Based on these facts, Plaintiff contends it is entitled to summary judgment on its breach of contract claim. R. Doc. 47-1 at 10. According to Plaintiff, Defendants agreed to pay Pelican $833,333.33 in tax credits by March 15, 2015. R. Doc. 47-1 at 10. To this date, they have failed to do so. Thus, Plaintiff contends it is entitled to summary judgment on this issue.

Plaintiff also seeks summary judgment on its claim for intentional misrepresentation, or in the alternative, negligent representation. R. Doc. 47-1 at 11. According to Plaintiff, Gabriel "misrepresented that DirectSun owned the Solar Leases" and intentionally concealed the fact that ABO was the rightful owner. R. Doc. 47-1 at 11. Further, he represented that he had already filed the tax credits, despite not having the authority to do so. R. Doc. 47-1 at 12. Finally, he stated that he owned certain real estate, when in fact that property had never been transferred to him. R. Doc. 47-1 at 12. Thus, Plaintiff contends it is entitled to summary judgment on its intentional misrepresentation claim.

### III. LAW AND ANALYSIS

An unopposed motion seeking summary judgment shall be granted "if appropriate." Fed. R. Civ. P. 56(e). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–22 (1986). Where the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995). The Court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

In this case summary judgment is proper. Defendants entered a contract where it promised to make $833,333.33 in tax credit payments by a certain date. The undisputed evidence demonstrates Defendants did not fulfill the terms of the contract. Thus, Plaintiff is entitled to summary judgment on its breach of contract claim.

Plaintiff also seeks summary judgment on its claim for intentional misrepresentation. The elements of delictual fraud or intentional misrepresentation in Louisiana are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable

6

reliance with resultant injury. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999). Here, the Court finds Defendants misrepresented that DirectSun owned the solar leases and had authority to file the related tax credits. Based on the unopposed evidence submitted by Plaintiff, the Court finds these misrepresentations were intentional.[2] Further, these representations were the basis of the contractual agreement between the parties; thus they were material. Finally, Plaintiff relied on these representations, which eventually resulted in financial injury. Defendant has not demonstrated there are questions of material fact with regard to any of these issues. Accordingly, Plaintiff is entitled to summary judgment with respect to its intentional misrepresentation claim.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment, R. Doc. 47, is hereby **GRANTED**.

New Orleans, Louisiana, this 20th day of December, 2016.

UNITED STATES DISTRICT JUDGE

---

[2] The Court also finds Defendants misrepresented they owned the Rockingham property, which was used as security for the agreement between the parties. At the very least, this misrepresentation was negligent. While the facts may not conclusively demonstrate that Defendants intentionally misrepresented their ownership interest in the property, the Court finds Plaintiffs have sufficiently demonstrated Defendants' intentionally misled Plaintiff, such that Plaintiff is entitled to summary judgment on its intentional misrepresentation claim.